01

02

03

04

05                    UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF CALIFORNIA

06

07  ALEJANDRO BELLO,                    )
                                        )
08          Petitioner,                 )    CASE NO. 2:07-cv-01316-RSL-JLW
                                        )
09          v.                          )
                                        )
10  D.K. SISTO, WARDEN, *et al.*,       )    REPORT AND RECOMMENDATION
                                        )
11          Respondents.                )
    _____)

12

13          I.      SUMMARY

14          Petitioner is currently incarcerated at the California State Prison, Solano in Vacaville,

15  California.  He pled guilty to one count of attempted murder in the first degree in Fresno

16  County Superior Court on October 1, 1993.  He is currently serving a sentence of life with the

17  possibility of parole and has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254

18  challenging his 2006 denial of parole by the Board of Parole Hearings of the State of

19  California (the "Board").[1]  (*See* Docket 1.)  Specifically, petitioner contends his Fourteenth

20  Amendment due process rights were violated both when the Board failed to abide by the

21  terms of his plea agreement and when it denied him a parole release date based upon

22  _____
            [1] The Board of Parole Hearings replaced the Board of Prison Terms, which was
    abolished on July 1, 2005.  *See* California Penal Code § 5075(a).

    REPORT AND RECOMMENDATION  -  1

insufficient evidence.  Respondent has filed an answer to the petition, together with relevant portions of the state court record, and petitioner has filed a traverse in reply to the answer. (*See* Dkts. 5 & 6.)  The briefing is now complete and this matter is ripe for review. The Court, having thoroughly reviewed the record and the briefing of both parties, recommends the Court deny the petition and dismiss this action with prejudice.

II.     STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this amended petition as it was filed after the enactment of AEDPA.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).  Because petitioner is in custody of the California Department of Corrections pursuant to a state court judgment, 28 U.S.C. § 2254 provides the exclusive vehicle for his habeas petition.  *See White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir.), *cert. denied*, 543 U.S. 991 (2004) (providing that § 2254 is "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction.").  Under AEDPA, a habeas petition may not be granted with respect to any claim adjudicated on the merits in state court unless petitioner demonstrates that the highest state court decision rejecting his petition was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1) and (2).

As a threshold matter, this Court must ascertain whether relevant federal law was "clearly established" at the time of the state court's decision.  To make this determination, the Court may only consider the holdings, as opposed to dicta, of the United States Supreme

REPORT AND RECOMMENDATION  -  2

Court.  *See Williams v. Taylor*, 529 U.S. 362, 412 (2000).  It is also appropriate to look to lower federal court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law.  *See Duhaime v. Ducharme*, 200 F.3d 597, 598 (9th Cir. 1999).  In this context, Ninth Circuit precedent remains persuasive but not binding authority.  *See Williams*, 529 U.S. at 412-13; *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

The Court must then determine whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law."  *See Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  *Williams*, 529 U.S. at 412-13. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  At all times, a federal habeas court must keep in mind that it "may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather that application must also be [objectively] unreasonable."  *Id.* at 411.

In each case, the petitioner has the burden of establishing that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254; *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).  To determine whether the petitioner has met this burden, a federal habeas court normally looks to the last

REPORT AND RECOMMENDATION  -  3

reasoned state court decision.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Medley v. Runnels*, 506 F.3d 857, 862 (9th Cir. 2007).  Where, as in this case, the state court's decision only addresses some of the claims, this Court must conduct an independent review of the record to determine whether the state courts' decisions with regard to the unaddressed claim was contrary or involved an unreasonable application of Supreme Court holdings.  *See Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000).  Although our review of the record is conducted independently, we continue to show deference to the state court's ultimate decision.  *See Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

III.    PRIOR STATE COURT PROCEEDINGS

The petition in this case presents two claims for relief.  (*See* Dkt. 1 at 5-1.) Respondent states that petitioner has properly exhausted his state court remedies and timely filed the instant petition with regard to both claims.  (*See* Dkt. 5 at 3.)  Although the state courts did not address petitioner's plea agreement claim, it is clear from the record that these claims were exhausted as they were properly presented to the state's highest court.  (*See id.*, Exhibit 8.)  *See* 28 U.S.C. § 2254(b)(3); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[s]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"); *see also Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999) (holding that California law requires presentation of claims to the California Supreme Court through petition for discretionary review in order to exhaust state court remedies).

Typically, this Court looks to the state court's orders upholding the Board's decision to determine whether they meet the deferential AEDPA standard.  *See Ylst*, 501 U.S. at 803-04.  In this case, the Fresno County Superior Court issued a thorough decision regarding

REPORT AND RECOMMENDATION  -  4

petitioner's claim that the Board's decision violated his due process rights by relying upon immutable factors. (*See* Dkt. 5, Exh. 5.) The superior court failed to address his plea agreement claim, however. (*See id.*) As discussed *supra*, when a state court issues a decision on the merits but does not provide a reasoned decision, we review the record independently to determine whether that decision was objectively reasonable. *See Delgado*, 223 F.3d at 982. Accordingly, this Court must conduct an independent review of petitioner's plea agreement claim. Although our review of the record is conducted independently, we continue to show deference to the state court's ultimate decision. *See Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

IV.    BACKGROUND

The probation officer's report, upon which the Board relied, summarized the facts of the crime in this case as follows:

> On July the 8th, 1993, at about 8:00 p.m., Fresno police were dispatched to an area regarding a gunshot victim. They arrived and observed the victim lying on his back on the sidewalk adjacent to a residence, [who] appeared to be conscious. His eyes were open, his arms were moving. There was a crowd there. The officers interviewed several people in the crowd, and the victim was bleeding from his head. Apparently the officers came up with some witnesses that said that this inmate had fired at least two shots in the direction of the victim, and the victim fell to the ground. The inmate then ran from the scene and was subsequently arrested, and the weapon was found fully loaded except for two spent casings. Inmate was positively identified as the shooter.

(Dkt. 5, Exh. 2 at 9-10.) The victim survived the shooting, but was partially paralyzed by his injuries.

Petitioner pled guilty to attempted murder on October 1, 1993, in Fresno County Superior Court. (*See id.*, Exh. 1.) He began serving his sentence of life with the possibility of

0 parole on December 15, 1993.  (*See id.*, Exh. 2 at 1.)  His minimum eligible parole date was

02 set for May 15, 2000.  (*See id.*)  Petitioner was nineteen-years-old when he committed this

03 offense.  He has been incarcerated for approximately sixteen years.

04      The parole denial, which is the subject of this petition, followed a parole hearing held

05 on September 20, 2006.  Petitioner was represented by counsel at the hearing and chose not to

06 discuss the factual circumstances surrounding the offense.  This was petitioner's third

07 subsequent parole consideration hearing.  (*See* Dkt. 1 at 5-2 - 5-3.)  All prior applications have

08 been denied.

09      V.     FEDERAL HABEAS CHALLENGES TO STATE PAROLE DENIALS

10      A.     *Due Process Right to be Released on Parole*

11      Before we consider petitioner's claims, we must first determine whether petitioner has

12 a constitutionally protected liberty interest in parole.  Under the Fifth and Fourteenth

13 Amendments to the United States Constitution, the government is prohibited from depriving

14 an inmate of life, liberty or property without the due process of law.  U.S. Const. amends. V,

15 XIV.  A prisoner's due process claim must be analyzed in two steps: the first asks whether the

16 state has interfered with a constitutionally protected liberty or property interest of the

17 prisoner, and the second asks whether the procedures accompanying that interference were

18 constitutionally sufficient.  *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989); *Sass*

19 *v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1127 (9th Cir. 2006).

20      The Supreme Court articulated the governing rule in the parole arena in *Greenholtz v.*

21 *Inmates of Neb. Penal,* 442 U.S. 1 (1979), and *Board of Pardons v. Allen,* 482 U.S. 369

22 (1987).  *See McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002) (applying "the 'clearly

established' framework of *Greenholtz* and *Allen"* to California's parole scheme).  The Court

REPORT AND RECOMMENDATION  -  6

0 in *Greenholtz* determined that although there is no constitutional right to be conditionally

02 released on parole, if a state's statutory scheme employs mandatory language that creates a

03 presumption that parole release will be granted if certain designated findings are made, the

04 statute gives rise to a constitutional liberty interest.  *See Greenholtz*, 442 U.S. at 7, 12; *Allen*,

05 482 U.S. at 377-78.

06  As discussed *infra*, California statutes and regulations afford a prisoner serving an

07 indeterminate life sentence an expectation of parole unless, in the judgment of the parole

08 authority, he "will pose an unreasonable risk of danger to society if released from prison."

09 Title 15 Cal. Code Regs., § 2402(a).  The Ninth Circuit has therefore held that "California's

10 parole scheme gives rise to a cognizable liberty interest in release on parole." *McQuillion*,

11 306 F.3d at 902.  To similar effect, *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) held

12 that California Penal Code § 3041 vests all "prisoners whose sentences provide for the

13 possibility of parole with a constitutionally protected liberty interest in the receipt of a parole

14 release date, a liberty interest that is protected by the procedural safeguards of the Due

15 Process Clause."  This "liberty interest is created, not upon the grant of a parole date, but

16 upon the incarceration of the inmate." *Biggs v. Terhune*, 334 F.3d 910, 915 (2003).  *See also*

17 *Sass*, 461 F.3d at 1127.

18  Because the Board's denial of parole interfered with petitioner's constitutionally-

19 protected liberty interest, this Court must proceed to the second step in the procedural due

20 process analysis and determine whether the procedures accompanying that interference were

21 constitutionally sufficient.  "[T]he Supreme Court [has] clearly established that a parole

22 board's decision deprives a prisoner of due process with respect to this interest if the board's

decision is not supported by 'some evidence in the record.'" *Irons*, 505 F.3d at 851 (citing

0  *Superintendent v. Hill*, 472 U.S. 445, 457 (1985) (holding the "some evidence" standard

02  applies in prison disciplinary proceedings)).  The "some evidence" standard requires this

03  Court to determine "whether there is any evidence in the record that could support the

04  conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56.  Although *Hill*

05  involved the accumulation of good time credits rather than release on parole, later cases have

06  held that the same constitutional principles apply in the parole context because both situations

07  directly affect the duration of the prison term.  *See e.g., Jancsek v. Or. Bd. of Parole*, 833 F.2d

08  1389, 1390 (9th Cir. 1987) (adopting the "some evidence" standard set forth by the Supreme

09  Court in *Hill* in the parole context); *accord*, *Sass*, 461 F.3d at 1128-29); *Biggs*, 334 F.3d at

10  915; *McQuillion*, 306 F.3d at 904.

11      "The fundamental fairness guaranteed by the Due Process Clause does not require

12  courts to set aside decisions of prison administrators that have some basis in fact," however.

13  *Hill*, 472 U.S. at 456.  Similarly, the "some evidence" standard is not an invitation to examine

14  the entire record, independently assess witnesses' credibility, or re-weigh the evidence.  *Id.* at

15  455.  Instead, it is there to ensure that an inmate's loss of parole was not arbitrarily imposed.

16  *See id.* at 454.  The Court in *Hill* added an exclamation point to the limited scope of federal

17  habeas review when it upheld the finding of the prison administrators despite the Court's

18  characterization of the supporting evidence as "meager."  *See id.* at 457.

19          B.    *California's Statutory and Regulatory Scheme*

20      In order to determine whether "some evidence" supported the Board's decision with

21  respect to petitioner, this Court must consider the California statutes and regulations that

22  govern the Board's decision-making.  *See Biggs*, 334 F.3d at 915.  Under California law, the

Board is authorized to set release dates and grant parole for inmates with indeterminate

REPORT AND RECOMMENDATION  -  8

sentences. *See* Cal. Penal Code § 3040 and 5075, *et seq.* Section 3041(a) requires the Board

to meet with each inmate one year before the expiration of his minimum sentence and

normally set a release date in a manner that will provide uniform terms for offenses of similar

gravity and magnitude with respect to their threat to the public, as well as comply with

applicable sentencing rules.  Subsection (b) of this section requires that the Board set a release

date "unless it determines that the gravity of current convicted offense or offenses, or the

timing and gravity of current or past convicted offense or offenses, is such that consideration

of the public safety requires a more lengthy period of incarceration." *Id.*, § 3041(b).  Pursuant

to the mandate of § 3041(a), the Board must "establish criteria for the setting of parole release

dates" which take into account the number of victims of the offense as well as other factors in

mitigation or aggravation of the crime.  The Board has therefore promulgated regulations

§ 2402, *et seq.*

Accordingly, the Board is guided by the following regulations in making a

determination whether a prisoner is suitable for parole:

> (a) General. The panel shall first determine whether the life
> prisoner is suitable for release on parole. Regardless of the
> length of time served, a life prisoner shall be found unsuitable
> for and denied parole if in the judgment of the panel the
> prisoner will pose an unreasonable risk of danger to society if
> released from prison.
>
> (b) Information Considered. All relevant, reliable information
> available to the panel shall be considered in determining
> suitability for parole. Such information shall include the
> circumstances of the prisoner's social history; past and present
> mental state; past criminal history, including involvement in
> other criminal misconduct which is reliably documented; the
> base and other commitment offenses, including behavior before,
> during and after the crime; past and present attitude toward the
> crime; any conditions of treatment or control, including the use
> of special conditions under which the prisoner may safely be

REPORT AND RECOMMENDATION  -  9

released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

15 CCR § 2402(a) and (b).  Subsections (c) and (d) also set forth suitability and unsuitability factors to further assist the Board in analyzing whether an inmate should be granted parole, although "the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel." 15 CCR § 2402(c).

In examining its own statutory and regulatory framework, the California Supreme Court in *In re Lawrence* recently held that the proper inquiry for a reviewing court is "whether some evidence supports the *decision* of the Board … that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings."  *In re Lawrence*, 44 Cal.4th 1181, 1212 (2008).  The court also asserted that the Board's decision must demonstrate "an individualized consideration of the specified criteria, but "[i]t is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public."  *Id*. at 1204-05, 1212.  As long as the evidence underlying the Board's decision has "some indicia of reliability," parole has not been arbitrarily denied.  *See Jancsek*, 833 F.2d at 1390.  As the California courts have continually noted, the Board's discretion in parole release matters is very broad.  *See Lawrence*, 44 Cal.4th at 1204.  Thus, the penal code, corresponding regulations, and California law clearly establish that the fundamental consideration in parole decisions is public safety and an assessment of a prisoner's current dangerousness.  *See id.*, at 1205-06.

C.      *Summary of Governing Principles*

By virtue of California law, petitioner has a constitutional liberty interest in release on parole.  The parole authorities may decline to set a parole date only upon a finding that petitioner's release would present an unreasonable present risk of danger to society if he is released from prison.  Where the parole authorities deny release, based upon an adverse finding on that issue, the role of a federal habeas court is narrowly limited.  It must deny relief if there is "some evidence" in the record to support the parole authority's finding of present dangerousness.  The penal code, corresponding regulations, and California law clearly support the foregoing interpretation.

VI.      PARTIES' CONTENTIONS

Petitioner's first argument is that his federal constitutional due process rights were violated when the Board failed to abide by the terms of his negotiated plea agreement, which he claims entitled him to be released after thirteen years.  (*See* Dkt. 1 at 7-8.)  Petitioner also contends that the Board's decision violated his due process rights because it was based on immutable factors and insufficient evidence.  (*See id.* at 10-23.)  Respondent asserts that petitioner fails to demonstrate a constitutional violation with regard to his plea agreement claim.  (*See* Dkt. 5 at 10-11.)  In addition, respondent argues that the Fresno County Superior Court's Order upholding the Board's decision with regard to petitioner's sufficiency of the evidence claim is consistent with clearly established federal law.  (*See id.*)

VII.      ANALYSIS OF RECORD IN THIS CASE

A.      *Violation of the Plea Agreement*

Petitioner's first ground for relief alleges that the Board's denial of parole failed to comply with the negotiated terms of his plea agreement, thereby violating his due process

REPORT AND RECOMMENDATION  -  11

0   rights. (*See* Dkt. 1 at 4-9.) Petitioner maintains that under the plea agreement, he should have

02  been paroled after serving thirteen years, or on December 15, 2006. (*See id.* at 9.)  In

03  addition, he claims that the "State is using facts related to the convicted offense that were

04  known at the time the agreement was made, and which it had agreed justified [a sentence of

05  life with the possibility of parole] to continually delay [his] release on parole." (*See id.* at 8.)

06  In support of his contention, petitioner points this Court to the "Matrix of Base Terms for

07  Attempted, Willful, Premeditated Murder," which he claims the parties agreed would

08  establish his parole release date, minus any post-conviction credits for good conduct. (*See id.*

09  at 7.)  He argues that under both *Brown v. Poole* and *Buckley v. Terhune*, he has a right to

10  specific performance of his negotiated plea agreement. *See Brown,* 337 F.3d 1155 (9th Cir.

11  2003) (holding that a prosecutor's oral promise during the plea colloquy is part of the contract

12  between the defendant and the State and entitles a defendant to specific performance of the

13  promise); *Buckley*, 441 F.3d 688 (9th Cir. 2006) (*en banc*) (same). (*See* Dkt 1 at 4-5).

14         Petitioner is correct, "[p]lea agreements are contractual in nature and are measured by

15  contract law standards." *Brown*, 337 F.3d at 1159 (quoting *United States v. De la Fuente*, 8

16  F.3d 1333, 1337 (9th Cir.1993)).  Although a criminal defendant has a due process right to

17  enforce the terms of a plea agreement, *see Santobello v. New York*, 404 U.S. 257, 261-62

18  (1971), there is no evidence that petitioner's subjective expectations about how soon he would

19  be paroled were part of that plea agreement.  .

20         In *Brown*, the prosecutor promised the defendant that he would "get out in half the

21  time" if he behaved himself in prison.  337 F.3d at 1157-58.  Unlike *Brown*, petitioner

22  provides no evidence that such a promise was made.  In fact, petitioner's reliance upon the

    Matrix suggests that his belief that he would be released in thirteen years is based upon his

REPORT AND RECOMMENDATION  -  12

own calculation, rather than a negotiated term of the plea agreement.  In any case, the court

has reviewed the sentencing transcript provided by petitioner and finds no language

supporting his contention.  (*See* Dkt. 1, "R.P.O. & Judgment.")  Thus, to the extent petitioner

believed the negotiated plea agreement included language that guaranteed him actual release

on parole, he has failed to demonstrate that such a term existed.  The possibility of parole is

not equivalent to a finding of suitability, and under state law (as it existed when he was

sentenced and as it exists now) an inmate must be found suitable before his release date is set.

Petitioner's sentence was based on a plea agreement of life with the possibility of parole.

Petitioner has therefore received the parole considerations to which he was entitled under that

agreement and sentence.

Because the record does not reflect a promise that petitioner would be paroled at any

time short of the maximum term of life, petitioner has failed to satisfy his burden of showing

he is entitled to the issuance of the writ.  *See Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir.

2002) (holding that it is petitioner's burden to show he is in custody in violation of the

Constitution).   Accordingly, I recommend this Court find that no constitutional violation

occurred and deny petitioner's request for an evidentiary hearing on this issue.  (*See* Dkt. 6 at

4.)

B.     *Commitment Offense*

The Board based its decision that petitioner was unsuitable for parole primarily upon

his commitment offense, as well as upon his institutional behavior, his failure to obtain

additional marketable skills, and his failure to make concrete employment plans.[2]  (*See* Dkt.

---

[2]  Contrary to petitioner's contention, the Board's decision was not based upon immutable
factors.  Three of the factors the Board relied upon involved petitioner's post-conviction conduct,

REPORT AND RECOMMENDATION  -  13

5, Ex. 5 at 31-32.)  The Board's findings track the applicable unsuitability and suitability factors listed in § 2402(b), (c) and (d) of Chapter 15 of the California Code of Regulations. After considering all reliable evidence in the record, the Board concluded that petitioner was not suitable for parole.  (*See id.* at 31-33.)

    With regard to the circumstances of the commitment offense, the Board concluded that this crime "was carried out in a manner which demonstrates an exceptionally calloused disregard for human suffering," and that the motive for the crime was "inexplicable in relation to the offense."  (*See id*., Exh. 2 at 31.)  *See* 15 CCR § 2402 (c)(1)(D) and (E).  As mentioned above, petitioner shot the victim twice in the chest, partially paralyzing him.  From the record, it appears that the motive for the crime was to harm the victim in retaliation for actions he had taken against petitioner and his brother several days earlier.  (*See id.*, Exh. 3 at 5.)  Although the facts of some shootings might well present stronger showings of "exceptionally callous" and "inexplicable" offenses, the requisite modicum of evidence is present to support the Fresno County Superior Court's Order upholding the Board's decision.

    The second factor cited by the Board was petitioner's institutional behavior.  While commending petitioner for remaining discipline-free for the past three-and-one-half years, the Board found these gains too recent to indicate substantial progress.  The Board based this finding on the fact that petitioner had received:

> three CDC 128A's, the first was in 1996 for talking too loud; the second was in 1996, disobeying orders, [he] w[as] asked to get off [his] bunk and [he] didn't; and the third was in 2002 for being out of bounds.  [He also received] four CDC 115's, the first was in 1998 for mutual combat without serious bodily injury; the second was in 2000, November of 2000 for being in the possession of inmate-manufactured alcohol; the third, in

which is changeable.

REPORT AND RECOMMENDATION  -  14

2002 was for refusal to test for controlled substance; and the last
one was in 2003 for disobeying orders.

(*Id.* at 23.)  A "CDC 115" documents a prisoner's misconduct which is believed to be a

violation of law or otherwise not minor in nature.  *See* 15 CCR § 3312(a)(3); *In re Gray*, 151

Cal.App.4th 379, 389 (2007).  A "CDC 128A" documents an incident of minor misconduct.

*See* 15 CCR § 3312(a)(2); *Gray*, 151 Cal.App.4th at 389.  Thus, under the minimally stringent

"some evidence standard," petitioner's relatively recent serious rule violations support the

Superior Court Order upholding the Board's decision.

The third and fourth factors cited by the Board were petitioner's need to upgrade

vocationally and to "shore up" his employment plans.  The evidence in the record indicates

that petitioner has obtained his GED, participated in English-as-a-second-language courses

and a Spanish literacy program, and participated for two years in an agricultural program

called the China Hill Project.  Because he was in the United States illegally when he

committed the offense, his parole plans include teaching English or working in the agriculture

industry in his home-country, Mexico.  (*See* Dkt. 5, Ex. 2 at 10-19.)  Petitioner received

multiple letters of support from family and friends living in the United States and Mexico

offering him both financial support and employment.  His family includes his parents, at least

two brothers (both of whom are in the armed services), grandparents, aunts, uncles, cousins

and godparents.  Thus, contrary to the Fresno County Superior Court's Order and to the

Board's finding, petitioner has acquired a marketable skill (teaching English) and has a trade

(working in the agricultural industry).  In addition to his family's financial support, he

received letters promising him employment in Mexico.

While the Board recognized that petitioner had no prior criminal history and had obtained his GED, received "numerous laudatory chronos, participated in AA and NA for the past two years, Alternative to Violence, anger management, English as a second language, and Spanish literacy program, and others," it nevertheless concluded that these gains were recent and did not outweigh the unsuitability factors. (*See id*. at 33.) While there is a modicum of evidence to support the Fresno County Superior Court's Order upholding the Board's decision that petitioner could have more concrete parole plans, there is no evidence to support its finding that petitioner lacks marketable skills.

Thus, "some evidence" supports all but one of the Board's findings on unsuitability factors. As stated above, it is beyond the authority of a federal habeas court to determine whether evidence of suitability outweighs the circumstances of the commitment offense, together with any other reliable evidence of unsuitability for parole. The Board has broad discretion to determine how suitability and unsuitability factors interrelate to support its conclusion of current dangerousness to the public. *See Lawrence*, 44 Cal.4th at 1212. In this case, the Board noted petitioner's progress, but concluded that he needed additional time to demonstrate his suitability for parole. The Board's decision is therefore supported by "some evidence" in the record.

VIII.   CONCLUSION

Given the totality of the Board's findings, there is "some evidence" in the record that petitioner's release as of the Board's 2006 decision would have posed an unreasonable risk to public safety. The Board's decision and the Fresno County Superior Court's Order upholding the Board's decision was therefore not contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of facts. Because the

REPORT AND RECOMMENDATION  -  16

Board and the state courts' ultimate decisions were supported by "some evidence," there is no need to reach respondent's argument that another standard applies.  Accordingly, I recommend the Court find that petitioner's constitutional rights were not violated, that the petition be denied, and that this action be dismissed with prejudice.

       This Report and Recommendation is submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with this Report and Recommendation, any party may file written objections with this Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Report and Recommendation."  Failure to file objections within the specified time may waive the right to appeal the District Court's Order.  *See Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  A proposed order accompanies this Report and Recommendation.

       DATED this 24th day of August, 2009.

JOHN L. WEINBERG
United States Magistrate Judge

REPORT AND RECOMMENDATION  -  17